**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

CARL HENRY OLSEN, III,

Plaintiff,

v.

NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants.

Case No. 3:18-CV-0149-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

[ECF Nos. 50, 55]

This case involves a civil rights action filed by Plaintiff Carl Henry Olsen, III ("Olsen") against Defendants Romeo Aranas ("Aranas"), Rusty Donnelly ("Donnelly"), and Jonathan Perry ("Perry") (collectively referred to as "Defendants"). Currently pending before the Court is Olsen's motion for summary judgment. (ECF No. 50.) Defendants opposed the motion and filed a countermotion for summary judgment, (ECF Nos. 51, 53, 55),[2] and Olsen replied. (ECF No. 56.) For the reasons stated below, the Court recommends that Olsen's motion for summary judgment, (ECF No. 50), be denied, and Defendants' countermotion for summary judgment, (ECF No. 55) be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Olsen is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated at the Lovelock Correctional Center ("LCC"). Olsen filed a complaint pursuant to 42 U.S.C. § 1983 on April 6, 2018. (ECF No. 1.) Olsen alleges in his first amended complaint that prison doctors diagnosed him with Hepatitis-C ("HCV") but Donnelly, Perry, and Aranas refused to give him HCV treatment. (ECF No. 4 at 4.) Olsen claims Defendants told him that, per NDOC medical directives, Olsen's liver

---

1 This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

2 ECF Nos. 51 and 55 are duplicate documents, with the record indicating ECF No. 51 is the opposition and ECF No. 55 is the countermotion for summary judgment. ECF No. 53 consists of Olsen's medical records, filed under seal.

damage would have to be deemed "severe liver damage" before he would be considered for HCV treatment. (*Id.*) Olsen's first amended complaint was screened pursuant to 28 U.S.C. § 1915A, (ECF No. 5), and Olsen was permitted to proceed on one Eighth Amendment claim for deliberate indifference to serious medical need against Donnelly, Perry, and Aranas related to his HCV treatment. (*Id.*)

Olsen has been incarcerated by the NDOC since 1990. (ECF No. 51-1.) In October 2000, Olsen tested positive for both HCV and Hepatitis-B ("HBV"). (ECF No. 53-1.) Despite the diagnosis, Defendants claim that Olsen never showed any signs of a decline in liver functioning, which according to Dr. Martin Naughton, a NDOC Senior Physician, includes, but is not limited to: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia; (4) ascites (accumulation of fluid in the abdomen); and (5) jaundice (yellow discoloration of the skin and mucous membranes). (ECF No. 51-3.)

Olsen was approved for Epclusa treatment for his HCV on February 5, 2020. (ECF No. 50 at 66.) At an appointment on March 12, 2020, Olsen did not show outward signs indicating a decline in liver functioning. (ECF No. 52-2 at 4-8.) However, at this appointment, Olsen did have a Fibrosure fibrosis score of 0.62 (high) stage 3. (*Id.* at 4.) Olsen also received an abdominal ultrasound on February 20, 2020. (ECF No. 53-3.) The unremarkable ultrasound showed "no focal abnormality of the liver," and a "tiny polyp" on the gallbladder was noted. (ECF No. 53-3.)

Olsen's motion for summary judgment argues that he is entitled to damages for his injuries caused by Defendants' delay in treating his chronic HCV. (ECF No. 50.) Defendants claim, in turn, that Olsen has not been harmed, there is no lack personal participation by them in Olsen's treatment, and they are entitled to qualified immunity. (ECF No. 51.) Olsen filed a reply in support of his motion. (ECF No. 56.)

///

///

///

**II. LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

### A. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the

deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.” *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a “serious medical need,” such that the state’s failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those “that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual’s daily activities; or the existence of chronic and substantial pain.” *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant’s state of mind, the extent of care provided, and whether the plaintiff was harmed. “Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment.” *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she “knows of and disregards an excessive risk to inmate health and safety.” *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies “somewhere between the poles of negligence at one end and purpose or knowledge at the other. . .” *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants’ conduct must consist of “more than ordinary lack of due care.” *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. “[S]ociety does not expect that prisoners will have unqualified access to health care….” *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the

inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**1. Analysis**

Starting with the objective element, the parties agree that Olsen's HCV constitutes a "serious medical need." However, Defendants argue summary judgment should be granted because Olsen cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Olsen's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Olsen's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Olsen to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence regarding the medical treatment Olsen received related to his HCV. (*See* ECF Nos. 53-1, 53-2, 53-3 (sealed).) Olsen was approved for Epclusa treatment for his HCV on February 5, 2020. (ECF No. 50 at 66.) Prior to starting his treatment, Olsen received an abdominal ultrasound on February 20, 2020. (ECF No. 53-3 (sealed).) The unremarkable ultrasound showed "no focal abnormality of the liver," and a "tiny polyp" on the gallbladder was noted. (*Id.*) At an appointment on March 12, 2020, Olsen did not show outward signs indicating a decline

in liver functioning. (ECF No. 52-2 at 4, 6-8 (sealed).) At this appointment Olsen had a Fibrosure fibrosis score of 0.62 (high) stage 3. (*Id.* at 4.) At an appointment on April 27, 2020, the doctor found Olsen was "ready to start therapy" and was started on Epclusa for 12 weeks. (*Id.* at 2-3, 5.) Additionally, it was noted that Olsen did not have "decompensated cirrhosis." (*Id.* at 5.)

Regarding Olsen's HCV and treatment, Defendant Donnelly stated in his response to interrogatories the following:

> [O]ver the years, inmate Olsen's [liver enzymes] fluctuated up and down not indicating a worsening condition. In fact, in 2017 his liver enzymes were totally within normal ranges… Inmate Olsen did not require immediate treatment at that time, and continued to be monitored with labs every six months or so…. [O]n June 5, 2019, Olsen's AST jumped up to 87, his ALT to 113. On May 15, 2020, [Olsen's] Fibrosure score was 0.80, which is an F4 now indicating possible cirrhosis…. Olsen signed his consent for treatment on February 6, 2020, and was started on Epclusa on May 1, 2020.

(ECF No. 50 at 32-33.) Defendant Perry stated in his response to interrogatories that Olsen's APRI score in July 2017 was 0.43 and he showed "no constitutional signs of Hep C infection," thus he did not qualify for treatment pursuant to MD 219. (*Id.* at 112.)

Dr. Martin Naughton, a NDOC Senior Physician, reviewed Olsen's medical records and attested to the following: Olsen has been under the continuous care of many NDOC doctors and has been seen and treated for various ailments over his time at various institutions. Olsen did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Olsen was approved for HCV treatment based upon his scores and the consent decree filed in this Court and began the DAA treatment in early 2020. Olsen's abdominal ultrasound showed no damage to his liver. Olsen did not require drug intervention to treat his HCV at the time relevant to his complaint due to his scores and lack of symptoms, which did not qualify him for treatment under NDOC policies at the time. (ECF No. 55-3.)

Defendants have submitted evidence that establishes they affirmatively monitored and ultimately treated Olsen's HCV and Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the

deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Olsen to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

In Olsen's motion for summary judgment, Olsen states that he is entitled to summary judgment and an award of declaratory relief and monetary damages because he "unnecessarily suffered HCV symptoms of diabetes, arthritis, abdomen pains and discomforts, elevated stress and worries as a result of Defendants delaying treatment for years." (ECF No. 50 at 9, 23.) Olsen additionally asserts that he suffered liver damage (cirrhosis) because Defendants "implemented, followed, and enforced the NDOC MD 219 policy to deny and delay treatment." (*Id.* at 7-9, 11, 15, 20-23.)

Despite Olsen's contention that due to delay in providing him HCV treatment he developed liver damage, the medical records and declarations suggest otherwise. The "unremarkable" ultrasound performed on Olsen in February of 2020 showed "no focal abnormality of the liver." (ECF No. 52-3 (sealed).) Further, Olsen's medical records from April 2020 explicitly state Olsen does not have "decompensated cirrhosis." (ECF No. 52-2 at 5 (sealed).) Olsen does not provide any evidence to show that he suffered liver or internal damage because of the alleged delay in HCV treatment. To the extent Olsen argues the treatment he received was unacceptable based on an increasing APRI score, a difference of opinion between an inmate and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *See Franklin*, 662 F.2d at 1344.

Therefore, Olsen has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744. Moreover, to the extent that Olsen's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable

can the plaintiff prevail. *Id.* Therefore, Olsen has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Olsen fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Olsen has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his HCV monitored for progression.

Based on the above, the Court recommends Olsen's motion for summary judgment be denied and Defendants' motion for summary judgment be granted.[3]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Olsen's motion for summary judgment, (ECF No. 50), be denied, and Defendants' motion for summary judgment, (ECF No. 55), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

///

///

///

[3] The Court does not address Defendants' personal participation or qualified immunity arguments because the Court finds that Olsen's constitutional claim fails on the merits.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Olsen's motion for summary judgment, (ECF No. 50), be **DENIED**, that Defendants' motion for summary judgment, (ECF No. 55), be **GRANTED**, and judgment be entered accordingly.

**DATED**: January 12, 2022.

UNITED STATES MAGISTRATE JUDGE